❏ Original     ❏ Duplicate



CLERK'S OFFICE
A TRUE COPY
Aug 27, 2024
/s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No. 24-M-483 (SCD) |
| Information about the location of the cellular | ) |
| telephone assigned call number 310-503-0839, | )   Matter No. 2023R00176 |
| as further described in Attachment A | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   9-10-24 _____ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. Stephen C. Dries   .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of   12/25/2024   .

Date and time issued:   8-27-24. 11:00 am _____     *Stephen C. Dri* _____
                                                                *Judge's signature*

City and state:   Milwaukee, WI _____     Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                  *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

1.      Records and information associated with the cellular device assigned call number 310-503-0839 ("Target Cell Phone") that is in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054

2.      The Target Cell Phone.

1

**ATTACHMENT B**

**Particular Things to be Seized**

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with Target Cell Phone for the time period **August 1, 2024 to the date of this warrant**:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

2

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by Target Cell Phone, including:

(i) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received); and

(iii) timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

b. Information associated with each communication to and from Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

c. Information about the location of Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data,

3

latitude-longitude data, per call measurement data (PCMD), Timing Advance, True Call, RTT, LOCDBOR, or similar and real time cell site information for 30 days and other precise location information.

    i.    To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii.    This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitute evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

4



CLERK'S OFFICE
A TRUE COPY
Aug 27, 2024
/s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 24-M-483 (SCD) |
| Information about the location of the cellular telephone assigned call number 310-503-0839, as further described in Attachment A | ) ) ) | Matter No. 2023R00176 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Possession with the intent to distribute controlled substances, and Conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __120__ days *(give exact ending date if more than 30 days:*  __12/25/2024__  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Dettmerring, FBI SA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: __8-27-24__

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 310-503-0839 (**Target Cell Phone**), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2.      The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

3.      Because these warrant applications seek the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the **Target Cell Phone**.

4.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018. I was assigned to the FBI Capital Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018 to April 1, 2020. Since April 1,

1

2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF). Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained and executed search and arrest warrants related to the distribution of illegal narcotics, and debriefed confidential informants and cooperating defendants. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

5.     I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and therefore does not set forth all of my knowledge about this matter.

7.     Based on the facts set forth in this affidavit, there is probable cause to believe that the user of the **Target Cell Phone** (believed to be Alysa D. PEIFER (dob: 10/07/1994)) has been committing, is committing, and will continue to commit violations of Title 21, United States Code, Sections 841(a)(1) and 846.  I know from training and experience that cell phone users normally have their cell telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the

2

**Target Cell Phone** will constitute and lead to evidence of federal offenses, namely violations of Title 21, United States Code, Sections 846 & 841(a)(1) (possession with intent to distribute controlled substances and conspiracy to distribute controlled substances), that have been committed by Dominique WILLIAMS (dob: 09/07/1989) and others, and are being committed by WILLIAMS, the user of the **Target Cell Phone** (believed to be PIEFER) and others.

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

9. On July 1, 2024, your affiant obtained a court order signed by the Honorable Pamela Pepper, Chief U.S. District Judge for the Eastern District of Wisconsin, authorizing the interception of wire communications to and from the cellular telephone assigned number 262-993-0926, which is used by Malik NICHOLS, and subscribed to Nicole Nichols. On August 1, 2024, the Honorable Pamela Pepper, Chief U.S. District Judge for the Eastern District of Wisconsin, entered an order authorizing the continued interception of wire communications to and from the cellular telephone assigned the telephone number 262-993-0926 (TARGET TELEPHONE 1), used by Malik Nichols, and the interception of wire communications to and from the cellular telephone assigned the telephone number 747-955-6842 (TARGET TELEPHONE 2), used by Dominique WILLIAMS.

3

10.     Based upon the location information for TARGET TELEPHONE 2, case agents believe that WILLIAMS flew from Chicago O'Hare International Airport to Los Angeles International Airport on August 19, 2024, and based upon the location information for TARGET TELEPHONE 2, it appears that WILLIAMS is still in the Los Angeles area.

11.     On August 24, 2024, at 9:26 p.m. TARGET TELEPHONE 2 received an incoming call from 310-503-0839 (**Target Cell Phone**) used by an unidentified female (subsequently believed to be identified as PIEFER).  WILLIAMS said, "Hello?" UF asked "Hey, what you doing?" WILLIAMS said "Shit, at the crib."  The UF asked: "Oh, did you still need your house cleaned?" WILLIAMS responded: "Probably tomorrow."  The UF said: "Oh fuck.  I can't tomorrow, but the next day I can, Monday.  Okay, umm I'm at work but I'll see what you needed."  WILLIAMS respond, "Alright."  The UF asked, "Also, I have people that want to go… Why what's up with Tae or you or anyone?" WILLIAMS asked: "You wanna drive?"  The UF then asked, "How far would it take along?"  WILLIAMS responded, "A day."  The UF questioned: "One day?"  WILLIAMS replied: "Yeah."  The UF then asked, "Uh, would I be driving with just weed or something else?"  WILLIAMS asked, "What?"  The UF responded: "Weed or something else?"  WILLIAMS asked, "You calling me, how you calling me?"  The UF said: "Hold on," and the call abruptly ended.  Based upon their training, experience, and the investigation to date, case agents believe that when the UF started asking WILLIAMS if she would be transporting "weed or something else," meaning another type of controlled substance, that WILLIAMS asked how she was calling him and then she hung up because she was

4

calling him on a regular phone call. I believe that the UF then hung up so she could call WILLIAMS back using an encrypted platform or a platform that cannot be intercepted by law enforcement such as Facetime. As set forth above, based upon the location information for TARGET TELEPHONE 2, it appears that WILLIAMS is still in the Los Angeles area. Therefore, based upon their training, experience, and the investigation to date, case agents believe that WILLIAMS and the UF were discussing driving controlled substances, i.e., "weed or something else," (meaning other types of controlled substances) from California to the Eastern District of Wisconsin.

12. On August 26, 2024, at approximately 3:29 p.m., WILLIAMS, using TARGET TELEPHONE 2, received an incoming call from, 310-503-0839 (**Target Cell Phone**), believed to be used by PIEFER. Set forth below is a transcription of the call:

| | |
|---|---|
| **WILLIAMS**: | What's up? |
| **PEIFER**: | What's up? |
| **WILLIAMS**: | Where you at? |
| **PEIFER**: | I'm at work. |
| **WILLIAMS**: | I thought you was coming to clean my house today? |
| **PEIFER**: | I was but I'm fucking irritated, this shit with you and Tae doing this weird shit to me is irritating. |
| **WILLIAMS**: | What is you talking about? |
| **PEIFER**: | You know what happened with Tae, your with him. |
| **WILLIAMS**: | I'm not with Tae, fool. |
| **PEIFER**: | Well, shits weird, you're not gonna ask me, hey can you get me a girl for this day and then I give him a girl he says ok, make sure she can do this time and this time and make sure she calls off work, get her right and tell him, Ok do I send the money and as soon as its time for me to send the money he goes, just send me her number, I send him the number then, then he says thanks twin, I don't need you now. That's fucked up, that's weird ass shit, I'm over it. I'm not helping you guys make millions of dollars when I'm making zero. |
| **WILLIAMS**: | [UI] I told you I was gonna have you come to my city. |

| | |
|---|---|
| **PEIFER**: | Yea, that shits not cool, its not fucking right. |
| **WILLIAMS**: | I don't work that way, you know I don't. |
| **PEIFER**: | Like that's, he went to her, and he was like I'm contacting her now, thanks twin, I don't need you. Bro I didn't put you together with her for you… |
| **WILLIAMS**: | What is you talking about? |
| **PEIFER**: | With the girl that is gonna go tomorrow, and now I'm making zero off of it because he went behind my back, its weird. |
| **WILLIAMS**: | Who? |
| **PEIFER**: | He's having Jada go. |
| **WILLIAMS**: | I don't even know who that is. |
| . . . | |
| **WILLIAMS**: | You think the niggas who robbed me getting away with that shit? |
| **PEIFER**: | Of course not, but that's you, like jaded, like crazy. |
| . . . | |
| **PEIFER**: | Ok, well you're not helping. |
| **WILLIAMS**: | You could come to my city, [UI]. |
| **PEIFER**: | I'm down I would have to leave this Saturday night and be back on Tuesday morning. |
| **WILLIAMS**: | [UI] Saturday night. |
| **PEIFER**: | I didn't hear you what you say? |
| **WILLIAMS**: | Amen to that, we finna get up out of here. |
| **PEIFER**: | Well I have to go Saturday, I have work and I can't miss a day with my promotion right now. |
| **WILLIAMS**: | Well, after I finish getting all of this stuff, I'm leaving. |
| **PEIFER**: | Can I meet you there Saturday to help work and do some stuff out there? |
| **WILLIAMS**: | No no no. |
| **PEIFER**: | Why? |
| **WILLIAMS**: | Cuz it don't work like that. |
| **PEIFER**: | Huh? |
| **WILLIAMS**: | Once I get there I ain't gon need no help. |
| **PEIFER**: | Bro, ok then you're not gonna help me. |
| **WILLIAMS**: | That's what I'm saying so we gon leave probably tomorrow. |
| **PEIFER**: | I can't. |
| **WILLIAMS**: | I don't give a fuck talking about you can't, that shit ain't paying you no money, you need $8000 right? |

6

| **PEIFER**: | Yes. |
| **WILLIAMS**: | Alright then, I'mma get you closer to it. |
| **PEIFER**: | Ok, I'll figure out who can cover my shifts I guess, can I come clean for $500 today? |
| **WILLIAMS**: | My shit ain't even $500 worth cleaning, all my shit is clothes. Hold on 2 seconds, let me call you back. |

13.     Based upon my training, experience, and investigation to date, case agents believe that the **Target Cell Phone**'s intercepted call with WILLIAMS, using TARGET TELEPHONE 2, on August 26, 2024, was regarding the user of the **Target Cell Phone** (believed to be PIEFER) potentially transporting controlled substances with or on behalf of WILLIAMS from California to the Eastern District of Wisconsin in exchange for money ("closer" to the $8000 needed to pay her bills). Additionally, during the call, WILLIAMS states "we gon leave probably tomorrow," meaning that the trip from California to the Eastern District of Wisconsin transporting an unknown quantity of controlled substances may begin "tomorrow," that is, today, August 27, 2024.

14.     On August 26, 2024, case agents searched law enforcement databases for information regarding the user of the **Target Cell Phone**, which revealed that in law enforcement records the phone number for the **Target Cell Phone** was associated with Alysa Deann Peifer, with listed addresses of: 168 Pinnacle Drive, Lake Forest, California, 92630; and 358 Baluster, Irvine, California, 92618. Based upon the location information for TARGET TELEPHONE 2, it appears as though WILLIAMS has been in the Irvine, California area when he has been in California since August 19, 2024.

15.     Case agents believe that monitoring the location information for the **Target Cell Phone** in conjunction with the court-authorized interception of TARGET

7

TELEPHONE 2 will enable case agents to conduct targeted physical surveillance and identify the user of the **Target Cell Phone**, and other of WILLIAMS' co-conspirators; identify and potentially interdict the suspected drug shipment/transportation from California to the Eastern District of Wisconsin, and additional stash/distribution locations used to store and prepare controlled substances for further distribution.

16.     In my training and experience, I have learned that T-Mobile is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

17.     Based on my training and experience, I know that T-Mobile can collect cell-site data on a prospective basis about the Target Cell Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2)

8

the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

18.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the

9

location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available.

<u>**AUTHORIZATION REQUEST**</u>

19. Based on the foregoing, I request that the Court issue the proposed warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

20. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

21. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 120 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously

10

jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

23. Because the warrants will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

# ATTACHMENT A

## Property to Be Searched

1.      Records and information associated with the cellular device assigned call number 310-503-0839 ("Target Cell Phone") that is in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054

2.      The Target Cell Phone.

## ATTACHMENT B

## Particular Things to be Seized

## I.      Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession,

custody, or control of the Provider, including any information that has been deleted

but is still available to the Provider or that has been preserved pursuant to a request

made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government

the following information pertaining to the Account listed in Attachment A:

> a.  The following subscriber and historical information about the customers
>     or subscribers associated with Target Cell Phone for the time period
>     **August 1, 2024 to the date of this warrant**:
>
>> i.   Names (including subscriber names, user names, and screen
>>      names);
>>
>> ii.  Addresses (including mailing addresses, residential addresses,
>>      business addresses, and e-mail addresses);
>>
>> iii. Local and long distance telephone connection records;
>>
>> iv.  Records of session times and durations, and the temporarily
>>      assigned network addresses (such as Internet Protocol ("IP")
>>      addresses) associated with those sessions;
>>
>> v.   Length of service (including start date) and types of service
>>      utilized;
>>
>> vi.  Telephone or instrument numbers (including MAC addresses,
>>      Electronic Serial Numbers ("ESN"), Mobile Electronic Identity
>>      Numbers ("MEIN"), Mobile Equipment Identifier ("MEID");
>>      Mobile Identification Number ("MIN"), Subscriber Identity
>>      Modules ("SIM"), Mobile Subscriber Integrated Services Digital
>>      Network Number ("MSISDN"); International Mobile Subscriber
>>      Identity Identifiers ("IMSI"), or International Mobile Equipment
>>      Identities ("IMEI");

13

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by Target Cell Phone, including:

(i) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received); and

(iii) timing advance data (PCMD, RTT, True Call, Timing Advance, LOCDBOR, or equivalent).

b. Information associated with each communication to and from Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

c. Information about the location of Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, per call measurement data (PCMD), Timing

14

Advance, True Call, RTT, LOCDBOR, or similar and real time cell site information for 30 days and other precise location information.

i.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitute evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

15